**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**EVA PINEDA-HERRERA, et al.,**

                    **Plaintiffs,**

       -against-

**DA-AR-DA, INC.,**
*doing business as*
**La Riqueza Restaurant, et al.,**

                    **Defendants.**
-------------------------------------------------------------x

**MEMORANDUM
AND ORDER**

**09-CV-5140 (RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiffs Eva Pineda-Herrera and Sandra Martinez ("plaintiffs") brought this suit for minimum wage, overtime and "spread-of-hours" payments owing pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law. On March 2, 2011, following a two-day trial, the jury returned a verdict in plaintiffs' favor. See Verdict Sheet (Mar. 2, 2011) ("Verdict Sheet"), Electronic Case Filing ("ECF") Docket Entry ("D.E.") #33. In accordance with special interrogatories included on the verdict sheet, the jury made findings as to each plaintiff's length of employment, hours, and wages; the jury also found that defendants Da-Ar-Da, Inc. ("Da-Ar-Da") and Romelia Benitez ("Benitez") (collectively, "defendants") willfully violated federal and state labor laws in their dealings with plaintiffs.[1] Id.

      The Court thereupon directed the parties to submit post-trial letter-briefs calculating the damages due pursuant to the jury's verdict. See Order (Mar. 14, 2011). Plaintiffs did so, and

---

[1] Defendants had previously admitted the other elements of the FLSA claims. See *infra* pp. 4-5.

moved for an award of attorney's fees pursuant to the fee-shifting provisions of the FLSA and the New York Labor Law. See Letter from Plaintiffs (Mar. 15, 2011) ("3/15/11 Pl. Letter") at 4, D.E. #37; 29 U.S.C. § 216(b); N.Y. Labor L. § 198. At the Court's direction, plaintiffs' counsel submitted a letter touching upon his qualifications and experience, as well as copies of each plaintiff's retainer agreement, see Order (Mar. 17, 2011), D.E. #38; Letter from Plaintiffs (Mar. 21, 2011) ("3/21/11 Pl. Letter"), D.E. #39; however, he failed to produce contemporaneous time records, as he had not maintained any. See Letter from Plaintiffs (Apr. 11, 2011) ("4/11/11 Pl. Letter") at 1, D.E. #49; see also Order (Apr. 6, 2011), D.E. #47. Defendants (who were then represented by counsel[2]) submitted a letter "find[ing] no fault" with plaintiffs' calculation of the damages and "defer[ring] to the Court's discretion" on the question of fees. Letter from Defendants (Mar. 24, 2011) ("3/24/11 Def. Letter") at 1, D.E. #41.

For the reasons discussed below, and in accordance with the jury's verdict, the Court finds defendants jointly and severally liable as follows: to plaintiff Pineda-Herrera, for $59,856.81 in damages; to plaintiff Martinez, for $46,333.75 in damages; and to plaintiffs jointly, for a single award of $13,125.00 in attorney's fees. The Court directs the Clerk to enter judgment accordingly.

---

[2] Shortly thereafter, defense counsel moved to be relieved from representing the two defendants. See Letter from Carl C. Belgrave, Esq. (Apr. 4, 2011), D.E. #44. Defendants consented to the motion, despite the Court's repeated warning that entities are not permitted to proceed without counsel in federal court. See Order to Show Cause (Apr. 4, 2011), D.E. #45; Minute Entry (Apr. 11, 2011), D.E. #48; Eagle Assocs v. Bank of Montreal, 926 F.2d 1305 (2d Cir. 1991). Defendants have not retained substitute counsel.

## BACKGROUND

Plaintiffs worked as waitresses at La Riqueza, a restaurant owned by defendants. Joint Pretrial Order (Nov. 23, 2010) at 1, D.E. #10. Plaintiff Pineda-Herrera worked from March 27, 2007 through February 15, 2009; plaintiff Martinez worked from January 5, 2008 to February 19, 2009. Verdict Sheet at 1-2. Defendants failed to produce any records of plaintiffs' wages and hours; accordingly, plaintiffs sought to establish their wages and hours through general testimony,[3] and defendants sought to rebut plaintiffs' claims through the testimony of defendant Benitez and current employees of the restaurant. It was undisputed that defendants paid each plaintiff $35.00 per day in wages, regardless of the number of hours worked; each plaintiff was also paid a $3.00 commission on some drink purchases made by patrons of the establishment.[4] Joint Pretrial Order at 1. Plaintiffs testified that they routinely worked long hours and received commission payments inadequate to make up for their low

---

[3] See 29 U.S.C. § 211(c) (requiring employers to preserve records of hours and wages); N.Y. Labor L. § 661 (similar); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003) ("When accurate records or precise evidence of the hours worked do not exist, an employee has carried out his burden [under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (internal quotations and brackets omitted).

[4] Plaintiffs also received a small amount of tips. Defendants did not provide evidence establishing that defendants were eligible to claim a "tip credit" against their minimum wage obligations. See 29 U.S.C. § 203(m) (specifying notice requirement for employers to claim a tip credit); Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1323 (1st Cir. 1992) (citing cases and holding that courts may not credit tips against an employer's minimum wage requirements absent evidence of such notice); Cao v. Wu Liang Ye Lexington Restaurant, Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (Chin, J.) (discussing the tip credit notice requirements under the FLSA and New York Labor Law and barring the application of a tip credit absent such notice). Accordingly, the Court instructed the jury, without objection from defendants' counsel, to disregard the amount of tips in determining each plaintiff's compensation.

daily pay. The jury found that on average, plaintiff Pineda-Herrera worked 65 hours over the course of a 5-day workweek and was paid $250 weekly in salary and commissions, and that on average, plaintiff Martinez worked 75 hours over the course of a 6-day workweek and was paid $270 in salary and commissions. Verdict Sheet at 1-2.

## DISCUSSION

After discussing the applicable statutes of limitations and other preconditions to liability, the Court, using the jury's findings, details its calculations as to the award due to each plaintiff pursuant to the jury's verdict.

### I. STATUTE OF LIMITATIONS

The FLSA provides for a two-year statute of limitations, extended to three years for "willful" violations. 29 U.S.C. § 255(a). This action was commenced on November 23, 2009. Plaintiff Martinez began working for defendants on January 5, 2008. See Verdict Sheet at 2. Accordingly, all aspects of her claims are timely under the shorter statute of limitations. Plaintiff Pineda-Herrera began working for defendants on March 27, 2007; the jury found that defendants willfully violated the FLSA in connection with their compensation of plaintiff Pineda-Herrera. Id. Accordingly, all aspects of her claims are timely under the three-year statute of limitations for willful violations. New York Labor Law sets forth a six-year statute of limitations for violations thereof. See New York Labor L. § 663(3). Both plaintiffs' claims are fully timely under state law.

### II. LIABILITY

To be held liable under the FLSA, a defendant must be an "employer," which the statute broadly defines to include individuals "acting directly or indirectly in the interest of an

employer." 29 U.S.C. § 203(d); see also id. § 203(g) (defining "employ" to include "suffer or permit to work"). Similarly, the New York Labor Law's minimum wage provisions apply to "employers," including in that term an "owner" or "proprietor." N.Y. Labor L. §§ 2, 652(1). Defendants Benitez and Da-Ar-Da each concede that they employed both plaintiffs. See Complaint ¶¶ 2, 20, 27, 63, 64, 71, D.E. #1; Answer (Jan. 19, 2010) ¶ 1, D.E. #2; Joint Pretrial Order at 1.

The FLSA, unlike the New York Labor Law, applies only where the employee or the employer was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a). Defendants conceded in their Answer that they were employers engaged in commerce within the meaning of the FLSA. Complaint ¶ 71; Answer ¶ 1. The Court denied defendants' belated request for leave to amend the Answer to deny the allegation that defendants were covered by the FLSA. Memorandum and Order (Feb. 22, 2011) at 1-2, D.E. #30.

Because defendants conceded that they employed plaintiffs and that they were employers engaged in commerce and thus covered under the FLSA, the only remaining question as to liability under the FLSA and the New York Labor Law is the sufficiency of each plaintiff's wages in light of the number of hours worked. Accordingly, the Court will calculate the amount of wages due, if any, before addressing the availability of liquidated damages, attorney's fees and costs.[5]

---

[5] Plaintiffs do not seek prejudgment interest. See 3/15/11 Pl. Letter at 1; Brock v. Superior Care, Inc., 840 F.2d 1054, 1063 (2d Cir. 1988) ("[I]n an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages.").

### III. WAGES DUE

The jury found that plaintiffs Pineda-Herrera and Martinez were paid, in wages and commissions, $250.00 and $270.00 per week, respectively. Verdict Sheet at 1-2. Because overtime obligations are calculated on a weekly basis, see 29 U.S.C. § 207(a)(1), the Court will determine the minimum compensation each plaintiff should have received on a weekly basis, under the applicable overtime, minimum wage and spread-of-hours provisions, and will determine the weekly shortfall by subtracting each plaintiff's actual pay from the weekly pay required by state and federal law.

#### A. Overtime

The jury found that plaintiffs Pineda-Herrera and Martinez worked 65 and 75 hours per week, respectively. The FLSA requires, for each hour worked in excess of 40 per week, compensation "at a rate not less than one and one-half times the regular rate at which [she was] employed." 29 U.S.C. § 207(a)(1). Of course, both plaintiffs worked at "regular rates" well below the minimum wages allowed under both federal and state law. Federal regulations (overlooked by plaintiffs) clarify that "the words 'regular rate at which he is employed' as used in section 7 [i.e., 29 U.S.C. § 207] must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5.

> Various Federal, State, and local laws require the payment of minimum hourly, daily or weekly wages different from the minimum set forth in the Fair Labor Standards Act . . . . Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum . . . .

Id.; see also Rodriguez v. Almighty Cleaning, Inc., No. 09-CV-2997(JS)(AKT), 2011 WL 691184, at *9 & n.4 (E.D.N.Y. Feb. 28, 2011) ("Under the FLSA, where the state minimum

wage is higher than the federal minimum wage, the federal overtime rate is calculated based on the state minimum wage."). Accordingly, for each hour worked in excess of 40 per week, each plaintiff is due overtime compensation under the FLSA in the amount of one and one-half times $7.15, the lawful regular rate applicable under state law during the relevant period. N.Y. Labor L. § 652(1).[6]

Plaintiff Pineda-Herrera typically worked 25 overtime hours per week, and was accordingly owed $268.13 in overtime pay (25 hours multiplied by 1.5 times her $7.15 "regular rate") for each week she worked for defendants. Plaintiff Martinez worked 35 overtime hours per week, and was owed $375.38 in overtime pay (35 multiplied by 1.5 times her $7.15 "regular rate") for each week she worked for defendants.

**B. Minimum Wage**

In addition to overtime compensation for each hour worked in excess of 40 per week, each plaintiff was due an hourly minimum wage for the first 40 hours of work. Plaintiffs' counsel used the applicable federal minimum wage to calculate the baseline minimum wage and overtime owed, while requesting that the Court use the higher state minimum wage to calculate the payments due under state spread-of-hours and liquidated damage provisions. 3/15/11 Pl. Letter at 1-4. During the applicable period, the federal minimum wage was $5.15 until July 23, 2007, $5.85 from July 24, 2007 through July 23, 2008, and $6.55 from July 24, 2008 until July 23, 2009. See 29 U.S.C. § 206(a)(1); 29 U.S.C. § 206(a)(1) (2006) (amended 2007). The state minimum wage was $7.15 per hour for the entire period. N.Y. Labor L. § 652(1).

---

[6] State law provides for the same level of overtime compensation (time-and-a-half) available under the FLSA. See 12 N.Y.C.R.R. § 142-2.2.

Plaintiffs did, however, plead and prove violations of the minimum wage provisions of the New York Labor Law. See Compl. ¶¶ 65-66, 77, 80; Verdict Sheet at 2. Accordingly, the Court will award the compensation due under the higher state minimum wage, while limiting the FLSA liquidated damages to the rates applicable under that statute. 29 U.S.C. § 216(b). Because each plaintiff worked 40 non-overtime hours per week, for those 40 hours each plaintiff was entitled to $286.00 per week under the $7.15 state minimum wage.

### C. Spread of Hours

New York state law requires that employers pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage," for any workday exceeding ten hours, measured from start to finish. 12 N.Y.C.R.R. § 142-2.4(a). The jury found that plaintiffs Pineda-Herrera and Martinez had, respectively, five and six workdays per week in which the "spread of hours" exceeded 10. Verdict Sheet at 1-2. Accordingly, plaintiff Pineda-Herrera was entitled to five hours of spread-of-hours compensation per week at the $7.15 state minimum wage, and thus was due an additional $35.75 per week. Plaintiff Martinez was entitled to six hours per week of such compensation, or an additional $42.90.

### D. Total Wages Due

In light of her overtime, minimum wage and spread-of-hours entitlements, plaintiff Pineda-Herrera should have been paid $589.88 per week: the sum of her entitlement to $268.13 in overtime pay, $286.00 in non-overtime pay, and $35.75 in spread-of-hours compensation. Her average $250.00 weekly pay (in wages plus commissions) fell short of this amount by $339.88. Accordingly, for her 99 weeks of work, plaintiff Pineda-Herrera is owed

$33,647.63.[7]

In light of her overtime, minimum wage and spread-of-hours entitlements, plaintiff Martinez should have been paid $704.28 per week: the sum of her entitlement to $375.38 overtime pay, $286.00 non-overtime pay, and $42.90 spread-of-hours pay. Her $270.00 average weekly pay (in wages plus commissions) fell short of this amount by $434.28. Accordingly, for her 58 weeks of work, plaintiff Martinez is owed $25,187.95.[8]

## IV. LIQUIDATED DAMAGES

Plaintiffs seek awards of liquidated damages under both the FLSA and New York Labor Law. See 3/15/11 Pl. Letter at 3-4; 29 U.S.C. § 216(b); N.Y. Labor L. § 663(1). Before discussing plaintiffs' eligibility for each form of damages, the Court will address whether plaintiffs may recover both forms of relief for the same violation.

The FLSA provides for liquidated damages equal to the unpaid wages due, unless the employer demonstrates to the satisfaction of the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful. 29 U.S.C. §§ 216(b), 260. The New York Labor Law authorizes an award, also characterized as "liquidated damages," equal to one-fourth of the unpaid wages due under that statute, upon a finding that the employer's

---

[7] That amount consists of the weekly shortfall ($339.88) multiplied by 99 weeks. The Court has calculated the relevant totals without intermediate rounding of amounts.

Plaintiffs calculated the wages due by rounding the time periods in question to a whole number of weeks. 3/15/11 Pl. Letter at 1. Defendants did not fault this choice of method. 3/24/11 Def. Letter at 1. Accordingly, the Court used that method.

[8] That amount comprises the weekly shortfall ($434.28) multiplied by 58 weeks, calculated without intermediate rounding.

violation was "willful." N.Y. Labor L. § 663(1) (2009).[9] Some decisions in this Circuit have awarded both types of damages for the same violations, reasoning that, because state case law characterizes the state liquidated damages as a "penalty," while federal case law characterizes FLSA liquidated damages as compensatory, the two awards serve different purposes. See Ke v. Saigon Grill, Inc., 595 F.Supp.2d 240, 261-62 (S.D.N.Y. 2008); Vasquez v. Ranieri Cheese Corp., 07-CV-464 (ENV), 2010 WL 1223606, at *18 (E.D.N.Y. Mar. 26, 2010); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999) (noting that "[l]iquidated damages are not a penalty exacted by the [FLSA], but rather compensation to the employee occasioned by the delay in receiving wages due"); Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 265 (2d Cir. 1999) (noting that "liquidated damages under [New York] Labor Law 'constitute a penalty' to deter an employer's willful withholding of wages due . . . .") (citing Carter v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994 (1981)). Other cases have found that distinction unpersuasive in light of the similar predicates for an award of liquidated damages under each statute. See Chun Jie Yin v. Kim, 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008); see also Jin v. Pacific Buffet House, Inc., No. CV-06-579 (VVP), 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009); Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *28-29 (S.D.N.Y. Feb. 1, 2007) (Lynch, J.) (calculating liquidated damages under state law only with respect to those wages, such as spread-of-hour wages, for which the FLSA provides

---

[9] The state provision has since been amended, effective November 24, 2009, to remove the requirement of willfulness and provide a defense mirroring the good-faith defense available under the FLSA: liquidated damages are now available "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Labor L. § 663(1).

no remedy).

This Court adopts the latter view. As evidenced by the scienter requirement of each statute, both forms of damages seek to deter wage-and-hour violations. See generally Yin, 2008 WL 906736, at *7. Both do so in a manner calculated to compensate the party harmed. See id. Because this Court finds no persuasive basis to distinguish the two forms of damages, see id., the Court will award the greater of the two where both forms of damages are otherwise available for the same violations.

**A.     Liquidated Damages Under the FLSA**

The FLSA's defense to liquidated damages is a narrow one: "[d]ouble damages are the norm, single damages the exception . . . ." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citation omitted). This case does not present any circumstances to rebut the "strong presumption" in favor of an award of liquidated damages. Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986) (quoted with approval in Reich, 121 F.3d at 71). In response to special interrogatories pertaining to the statute of limitations and the availability of state liquidated damages, the jury found willful violations of the FLSA with regard to plaintiff Pineda-Herrera, and willful violations of the New York Labor Law with regard to both plaintiffs. Verdict Sheet at 1-2. Accordingly, the Court will not exercise its discretion to reduce the award of liquidated damages available under the FLSA. See generally Lanzetta v. Florio's Enters., Inc., No. 08 Civ. 6181(DC), 2011 WL 253961, at *7 (S.D.N.Y. Jan. 25, 2011) (Chin, J.).

The FLSA authorizes liquidated damages in an amount equal to the unpaid overtime and minimum wages available under that statute. 29 U.S.C. § 216(b). As discussed above,

the FLSA required weekly overtime payments of $268.13 for plaintiff Pineda-Herrera and $375.38 for plaintiff Martinez: FLSA overtime obligations are a function of the employee's "regular rate," 29 U.S.C. § 207(a)(1), an amount that may exceed the FLSA minimum wage, and must equal or exceed the higher state minimum wage.[10]

In contrast, for non-overtime wages, the FLSA requires only that employers pay the minimum wage rates set by federal law. See 29 U.S.C. § 206(a)(1); Mendez v. Nooch, Inc., No. 07 Civ. 11174 (LLS), 2009 WL 666771, at *2-4 (S.D.N.Y. Mar. 6, 2009). To account for this distinction in fixing the FLSA liquidated damages available, the Court must determine the amount each plaintiff should have been paid for her non-overtime hours under the federal minimum wage. This amount varied during the time period in question, inasmuch as the federal minimum wage rose twice. The federal minimum wage was $5.15 per hour until July 23, 2007, $5.85 from July 24, 2007 through July 23, 2008, and $6.55 from July 24, 2008 until July 23, 2009. See 29 U.S.C. § 206(a)(1); 29 U.S.C. § 206(a)(1) (2006) (amended 2007).

Plaintiff Pineda-Herrera worked 17 weeks during the period when the federal minimum wage was $5.15, 52 weeks under the $5.85 minimum wage, and 30 weeks under the $6.55 minimum wage. During those periods, plaintiff Pineda-Herrera worked 40 non-overtime hours per week. Accordingly, she was entitled to $206.00, $234.00 and $262.00 in non-overtime wages during each week of those periods, respectively. Adding her $268.13 weekly overtime entitlement, subtracting her actual weekly pay of $250.00, and multiplying the difference by the number of weeks worked, the Court finds that plaintiff Pineda-Herrera is entitled to $25,324.38 in liquidated damages under the FLSA.

---

[10] See *supra* pp. 6-7.

Plaintiff Martinez worked 28 weeks during the period when the federal minimum wage was $5.85 per hour, and 30 weeks under the $6.55 minimum wage. Plaintiff Martinez worked 40 non-overtime hours per week and was entitled to $234.00 and $262.00 in non-overtime wages during each week of those respective periods. Adding her $375.38 weekly overtime entitlement, subtracting her actual weekly of $270.00, and multiplying the difference by the number of weeks worked, the Court finds that plaintiff Martinez is entitled to $20,523.75 in liquidated damages under the FLSA.

### B. Liquidated Damages Under the New York Labor Law

Under the state statute in effect at the time of their employment, plaintiffs may recover liquidated damages equal to one quarter of the amount due for "willful" underpayments in violation of the New York Labor Law. See N.Y. Labor L. § 663(1) (2009); Verdict Sheet at 1-2 (finding willful violations of the New York Labor Law). Having already awarded FLSA liquidated damages for defendants' minimum wage and overtime violations, the Court need only award state liquidated damages equal to one quarter of the unpaid spread-of-hours wages. The Court finds that plaintiff Pineda-Herrera is entitled under state law to $884.81 in liquidated damages, equal to one quarter of the weekly $35.75 spread-of-hours pay due, multiplied by the 99 weeks she was employed. Plaintiff Martinez is entitled to $622.05 in liquidated damages under state law, equal to one quarter of the weekly $42.90 spread-of-hours pay due, multiplied by the 58 weeks she was employed.

## IV. ATTORNEY'S FEES

The FLSA and the New York Labor Law each provide for a mandatory award of a

reasonable attorney's fee and costs to a prevailing plaintiff.[11] 29 U.S.C. § 216(b); N.Y. Labor L. § 663(1). Plaintiffs' counsel outlined the 82 hours he spent working on the case: 35 hours of trial preparation, 17 hours at trial, 12 hours of deposition practice, 3 hours for court appearances prior to trial, and 15 hours preparing and responding to paper discovery. 3/15/11 Pl. Letter at 5. Plaintiffs' counsel further submitted a letter justifying his $350 hourly rate in light of his qualifications and experience. See 3/21/11 Pl. Letter at 1. Defendants objected to neither the stated hours nor the hourly rate requested. 3/24/11 Def. Letter at 5.

Nevertheless, upon the Court's request for contemporaneous time records corroborating the hours worked, see Order (Apr. 6, 2011), plaintiffs' counsel submitted a letter stating that he had not kept contemporaneous time records and citing case law in which courts granted fee requests unsupported by contemporaneous time records where "plaintiff's counsel had operated on his anticipation of seeking a percentage fee should the action prove successful . . . ." 4/11/11 Pl. Letter at 1 (quoting Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 59-60 (E.D.N.Y. 2010)). Plaintiffs' counsel included copies of plaintiffs' retainer agreements, which allow counsel to accept either any court-awarded fees or one third of plaintiffs' total recovery (inclusive of fees). See Retainer Agreements (Apr. 11, 2011), Ex. A to D.E. #49.

With scant exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). In Carey, the Second Circuit announced, in 1983, that "any attorney . . . who applies for court-ordered compensation in this Circuit for work done after

---

[11] Plaintiffs' submissions did not request that the Court include costs of litigation in the judgment.

the date of this opinion must document the application with contemporaneous time records." Id. at 1148. The Court of Appeals reiterated this position in Scott v. City of New York ("Scott I"), 626 F.3d 130 (2d Cir. 2010), and, on appeal after remand, again in Scott v. City of New York ("Scott II"), No. 09-3943-cv, slip op. (2d Cir. May 24, 2011). The Circuit Court did acknowledge that extenuating circumstances might justify a limited exception to the Carey requirement, "such as where the records were consumed by fire . . . ." Scott I, 626 F.3d at 134. However, the Court made clear "that *Carey* establishes what is essentially a hard-and-fast rule 'from which attorneys may deviate in only the rarest of cases,'" Scott II, slip op. at 3 (quoting Scott I, 626 F.3d at 133), and that deviations from the rule "might only be justified by truly unusual circumstances beyond the applying attorney's control." Scott II, slip op. at 4.

The cases cited by plaintiffs' counsel to justify his failure to keep contemporaneous time records are inapposite and readily distinguishable. In the first such case, Alleyne v. Time Moving & Storage Inc., the court upheld a percentage fee provision in a class action settlement pursuant to Rule 23(h) of the Federal Rules of Civil Procedure. 264 F.R.D. at 58-61. The percentage fee method is, indeed, an approach well established in class action cases. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 48 (2d Cir. 2000) (discussing the history of fee methodologies employed in class action cases); Alleyne, 264 F.R.D. at 58 (noting that a fee award that constitutes "a percentage of the class settlement fund" is one method available "in the class action context"). The Alleyne court cross-checked the sought percentage fee against the lodestar approach, finding the fee reasonable despite "counsel's poor decision not to keep detailed records . . . ." Id. at 60. The court expressly stated that, had

-15-

plaintiff's counsel sought "to justify his fee by way of a lodestar-style methodology, . . . his inability to justify his fees for failure to keep such records would have seriously undermined his fee request." Alleyne, 264 F.R.D. at 60.

Plaintiffs' counsel in the instant case also relies on dicta in Misiewicz v. D'Onofrio General Contractors Corp., which, citing Alleyne, observed that attorneys may "receive a percentage compensation in FLSA collective actions." No. 08 CV 4377 (KAM) (CLP), 2010 WL 2545439, at *5 n.3 (E.D.N.Y. May 17, 2010). Unlike the instant case, Misiewicz did not involve a fee application; rather, the court approved a fee settlement that was negotiated between the parties "at arm's length." Id. at *5. Accordingly, the decisions in Alleyne and Misiewicz do not supplant the Second Circuit's long-established, repeatedly announced rule that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records." Carey, 711 F.2d at 1138.

The decisions that control this case are Scott I and II, wherein the Second Circuit declared that, while the absence of contemporaneous time records will ordinarily preclude a fee award altogether, "rare circumstances," such as the accidental destruction of the records by fire or computer malfunction, might justify such an award. Scott I, 626 F.3d at 134. On remand in that case, the district court reluctantly authorized a fee award, albeit discounted, in part because the court had directly observed counsel's performance over the course of six years of litigation. Scott v. City of New York, No. 02 Civ. 9530 (SAS), 2011 WL 867242, at *2 (S.D.N.Y. Mar. 9, 2011). The district court was, however, "loathe to create a 'personal observation' exception" to Carey. Id. The Second Circuit was similarly loathe to authorize such an exception: on a subsequent appeal, the Court of Appeals vacated the district court's

decision, holding that a fee award cannot be predicated on "the district court judge's personal observation and opinions of the applying attorney . . . ." Scott II, slip op. at 5. The Court of Appeals further held that docket entries and other official, contemporaneous records of an attorney's court appearances could, in the discretion of the trial judge, justify an award for the time reflected therein. Id. at 6. Scott II reiterated that court-ordered compensation for other hours, such as out-of-court preparation or travel time, could be justified only by contemporaneous time records or by exceptional circumstances explaining their absence. Id. at 6.

This Court concludes that plaintiffs' counsel's misplaced reliance on Alleyne and Misiewicz, which led to his "poor decision not to keep detailed records," Alleyne, 264 F.R.D. at 60, justifies a one-time limited exception to Carey, with substantial discounting to deter future violations. Counsel's presence during trial and during several pretrial appearances is documented in official court records and is thus compensable to the extent documented therein. Plaintiffs' counsel claims to have spent 20 hours at trial and pretrial conferences, 3/15/11 Pl. Letter at 5; the Court will award compensation for only 16.8 hours, the amount reflected in official court records of plaintiffs' counsel's appearances.[12]

---

[12] Plaintiffs' counsel was present for 20 minutes at the initial conference, see Minute Entry (Feb. 3, 2010), D.E. #4, 90 minutes at the settlement conference, see Minute Entry (June 14, 2010), D.E. # 8, and 90 minutes at the final pretrial conference, see Minute Entry (Feb. 11, 2011), D.E. #25. Plaintiffs' counsel was present at the 9:00 a.m. scheduled start time of jury selection, see Scheduling Order (Dec. 16, 2011), D.E. #14; that proceeding lasted until 11:15 a.m., 135 minutes later, see Minute Entry (Feb. 28, 2011), D.E. #31. Similarly, plaintiffs' counsel was present at the 9:30 a.m. scheduled start time of the first day of trial, id., which lasted until 4:36 p.m., 426 minutes later. Minute Entry (Mar. 1, 2011), D.E. #32. (While the start of both jury selection and trial were delayed by defendants' counsel's tardiness, plaintiffs' counsel was present at the appointed starting time.) Finally, plaintiffs' counsel was present
(continued...)

Plaintiffs' counsel additionally requests compensation for 62 hours of other work, including depositions, paper discovery, and trial preparation. Id. While the hours requested are not obviously unreasonable, plaintiffs' counsel made no effort to document them appropriately, and they are not reflected in court records. Nevertheless, given counsel's explanation for his recordkeeping deficiency, and defendants' failure to object to the fee request, the Court will in this case authorize some recovery, but only one-third of the 62 out-of-court hours requested. Therefore, plaintiffs are awarded compensation for 37.5 hours of plaintiffs' counsel's time: the 16.8 hours documented by official records and 20.7 hours of out-of-court time. Defendants' counsel did not object to the requested $350 hourly rate. 3/24/11 Def. Letter at 1. Based on plaintiffs' counsel's representation that he will accept the court-ordered fee in lieu of a contingency fee, see 3/15/11 Pl. Letter at 5, the Court will authorize a fee award of $13,125.00, rather than the $28,700.00 award requested. Plaintiffs' counsel is admonished to maintain appropriate records in all future cases.

## **CONCLUSION**

For the foregoing reasons and in implementation of the jury's verdict, the Court concludes that defendants Da-Ar-Da, Inc. and Romelia Benitez are jointly and severally liable to plaintiffs under federal and state law and are directed to pay the following:

1. to plaintiff Pineda-Herrera, $59,856.81 in damages;

---

[12](...continued)
from 9:30 a.m. until 1:37 p.m., a total of 247 minutes, on March 2, 2011, for the close of trial, the jury's deliberation, and post-trial proceedings. Minute Entry (Mar. 2, 2011), D.E. #36. Accordingly, plaintiffs' counsel was present for 16.8 hours of appearances documented in the Court's records. The 3.2-hour differential between the number of hours claimed (20) and those documented in the court file is presumably attributable to travel time, which is not compensable absent contemporaneous time records. See Scott II, slip op. at 6.

2. to plaintiff Martinez, $46,333.75 in damages;

3. to plaintiffs Pineda-Herrera and Martinez jointly for reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and N.Y. Labor L. § 663, a single award of $13,125.00; and

4. to each plaintiff, post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk is directed to enter this Order into the ECF system and to transmit copies to defendants via Federal Express at 82-42 168th St., Jamaica, NY 11432. The Clerk is further directed to enter judgment accordingly. The parties are advised that the deadline to file a notice of appeal will be 30 days after the Clerk enters judgment. Fed. R. App. P. 4(a)(1).

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**May 26, 2011**

        **ROANNE L. MANN**
        **UNITED STATES MAGISTRATE JUDGE**